IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEJON RAMON WALDRON,<br><br>Defendant. | ORDER AND<br>MEMORANDUM DECISION<br>DENYING MOTION FOR<br>COMPASSIONATE RELEASE<br><br>Case No. 1:15-cr-41-TC |

Dejon Ramon Waldron, who is serving a 17-year federal sentence for drug and firearm crimes, filed a motion for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), asserting that the court has extraordinary and compelling reasons to reduce his sentence and release him from custody. To justify the relief he seeks, he cites health risks related to COVID-19 and asserts he is the only available caregiver for his adult daughter who allegedly "needs/requires 24 hour care." (Mot. for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) at 5, ECF No. 218.) As explained below, Mr. Waldron has not provided adequate evidence to support his motion, and, consequently, he has not met the threshold requirement that extraordinary and compelling reasons warrant his early release. Accordingly, the court denies his motion.

1

A. **Exhaustion of Remedies**

The First Step Act requires a defendant to exhaust his administrative remedies before petitioning the court for relief. 18 U.S.C. § 3582(c)(1)(A). To do so, he must first submit a request to the Director of the Bureau of Prisons (BOP) asking the Director to bring a motion on the defendant's behalf seeking reduction of his term of imprisonment. Id. If the BOP denies his request, or if thirty days have passed since the date of the request (whichever is earlier), the defendant may file his own motion with the court. Id.

Mr. Waldron has exhausted his administrative remedies. On June 17, 2022, he submitted a Request for Administrative Remedy to the Warden of the BOP facility where he resides and asked for compassionate release for the same reasons he now raises with the court. (Ex. 1 to Mot. at 4, ECF No. 218-1.) The Warden denied the request, after which Mr. Waldron appropriately filed his own request for compassionate release with this court. (See id. at 3.)

B. **Extraordinary and Compelling Reasons**

Once a defendant has satisfied the exhaustion requirement, the court applies a three-step test to determine whether to reduce the sentence and release the defendant. United States v. McGee, 992 F.3d 1035, 1042–43 (10th Cir. 2021). In step one, the court determines "whether extraordinary and compelling reasons warrant a sentence reduction." Id. at 1042 (internal quotations omitted). Because the statute does not define "extraordinary and compelling reasons," the court is left to its discretion to determine whether the defendant's motion satisfies the first step (although the court may refer to the United States Sentencing Commission's policy statement in USSG § 1B1.13, in which the USSC interprets the phrase). Id. at 1042–43. If the defendant meets the threshold requirement, the court then considers "whether such reduction is consistent with applicable policy statements issued by the [United States] Sentencing

Commission." Id. at 1042 (internal quotations and emphasis omitted). Finally, if the answer under step two is "yes," the court "consider[s] any applicable § 3553(a) factors and determine[s] whether, in its discretion, the reduction … is warranted in whole or in part under the particular circumstances of the case." Id. (internal quotations omitted). "'[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.'" Id. at 1043 (quoting United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021)).

As discussed below, neither Mr. Waldron's COVID-19 argument nor his caregiver argument gets him across the threshold requiring extraordinary and compelling reasons to reduce his sentence.

1. COVID-19 Risks

Mr. Waldron contends that COVID-19 poses a serious risk to his health and justifies his early release. Mr. Waldron, who is 44 years old and resides at the BOP's FCI Sheridan facility, declares that he is "at extreme danger of being exposed to the many COVID variants due to the horrid conditions of the Prison setting," and that he has chronic health conditions that put him at risk of severe illness if he contracts the virus. (Mot. at 5.)

To begin, he does not describe, much less provide evidence of, the "horrid" prison conditions that create an undue risk of contracting COVID-19. In fact, the record the United States produced shows that the risk is low. (See U.S. Opp'n Mem. at 3, ECF No. 223 (listing low risk level at FCI Sheridan); Ex. A to U.S. Opp'n Mem., ECF No. 223-1 (describing BOP response to the COVID-19 Pandemic).)

Additionally, he does not cite to any underlying medical condition (for example, obesity, diabetes, a weakened immune system, heart disease, or chronic lung disease) that puts him at

increased risk of serious illness or death if he were to become infected. At most, he claims (without elaboration or support) that he "suffer[s] from chronic health conditions, including lead poisoning due to shrapnel in [his] body that can not [sic] be removed." (July 19, 2022 "Request for Administrative Remedy" submitted to FCI Sheridan Warden, Ex. 1 to Mot., ECF No. 218-1 at p. 4.) His medical records do not refer to lead poisoning. (See BOP Medical Records for Mr. Waldron, Sealed Ex. B to U.S. Opp'n Mem., ECF No. 224.) Instead, they focus almost exclusively on dental problems occurring between 2018 and 2021. (See id.) In 2022, he claimed to have high blood pressure, but he refused to submit to blood pressure checks. (Id., ECF No. 224-3 at 29.) He simply has no evidence to verify his claim.

Moreover, he has been vaccinated against COVID-19. Many courts have rejected compassionate release motions in similar circumstances, because the COVID-19 vaccine is designed to greatly reduce the chance of severe illness and death. See, e.g., United States v. MacRae, No. 21-4092, 2022 WL 803978, at *2 (10th Cir. Mar. 17, 2022) ("Given the effectiveness of COVID-19 vaccines, we agree with the Sixth and Seventh Circuits that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction.") (internal quotation marks and citations omitted); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (stating there is "certainly room for doubt" that a fully vaccinated individual could establish 'extraordinary and compelling reasons' for early release based on COVID-19 risks in a correctional facility); United States v. Smith, No. 2:98-cr-0009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("[D]istrict courts across the country … have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection.") (collecting cases);

4

United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–44, 845 ( (D. Ariz. 2021) (collecting cases representing "growing consensus" that a defendant's COVID-19 vaccination "weighs against a finding of extraordinary and compelling circumstances").

Mr. Waldron is a relatively healthy 44-year-old who is fully vaccinated against the virus. He provides no reason to grant his request for compassionate release based on COVID-19 concerns.

2. Caregiver for Daughter

Mr. Waldron alternatively insists the court has an extraordinary and compelling reason to release him now because he is "the ONLY AVAILABLE caregiver that can and will care for" his adult daughter who allegedly "needs/requires 24 hour care." (Mot. at 5 (emphasis in original).) In support, he provides a one-page "Patient Health Summary" for his daughter and two letters—one from his daughter and one from her grandmother—detailing his daughter's childhood, physical health, mental health, and financial problems. (See Attachments to Mot., ECF Nos. 218-1, 218-3.)

Mr. Waldron's daughter, who is 22 years old, independently lives in an apartment and has two jobs. She wrote a coherent letter describing her mental health disorders, emotional struggles, and her difficulty making enough money to cover her costs of living. Her grandmother, who apparently acted as a surrogate parent, provided a letter that also belies Mr. Waldron's claim. The grandmother expressed concern in her letter that she and her husband are now on a fixed income and will not "be able to help [Mr. Waldron's daughter] with living expenses, especially now that she has moved out of the house and out of the state." (July 10, 2022 Letter to FCI Sheridan Warden, ECF No. 218-1 at p. 8 (emphasis added).) Both letters show that his daughter, although struggling, is not in need of constant care.

5

Although the court is sympathetic to the problems Mr. Waldron's daughter faces, the evidence demonstrates that she does not need a caregiver in the usual sense of the word, much less a caregiver providing "24 hour care." Although she would no doubt benefit from her father's emotional and financial support, her needs are not extraordinary and compelling circumstances that warrant Mr. Waldron's early release.

**Conclusion**

For the reasons set forth above, the court denies Mr. Waldron's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 218).

SO ORDERED this 18th day of January, 2023.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge