IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br><br><br>DEJON RAMON WALDRON,<br><br>Defendant. | ORDER AND<br>MEMORANDUM DECISION<br>DENYING MOTION FOR<br>COMPASSIONATE RELEASE<br><br>Case No. 1:15-cr-41-TC |

Dejon Ramon Waldron, who is serving a 17-year federal sentence for drug and firearm crimes, has filed a second motion under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), asserting that there are extraordinary and compelling reasons for the court to reduce his sentence (ECF No. 239). The court denied Mr. Waldron's first motion under the First Step Act (ECF No. 218), in which he requested compassionate release, on January 18, 2023 (ECF No. 232). Under the District of Utah's General Order 22-022,[1] the court must screen motions for compassionate release to 1) verify that the requirements of 18 U.S.C. § 3582(c)(1)(A) have been met; and 2) determine whether it plainly appears from the motion (for instance, because it is a successive motion that does not identify new extraordinary and compelling circumstances) that the

---

[1] Available at: https://www.utd.uscourts.gov/general-orders.

1

defendant is not entitled to relief. Because the court determines that Mr. Waldron has not presented any new extraordinary and compelling reasons, it denies his motion.

### A. Exhaustion of Remedies

The First Step Act requires a defendant to exhaust his administrative remedies before petitioning the court for relief. 18 U.S.C. § 3582(c)(1)(A). To do so, he must first submit a request to the Director of the Bureau of Prisons (BOP) asking the Director to bring a motion on the defendant's behalf seeking reduction of his term of imprisonment. Id. If the BOP denies his request, or if thirty days have passed since the date of the request (whichever is earlier), the defendant may file his own motion with the court. Id.

Mr. Waldron has exhausted his administrative remedies. On July 1, 2023, he submitted a Request for Administrative Remedy to the Warden of the BOP facility where he resides and asked for compassionate release for substantially the same reasons he now raises with the court. (Def.'s Mot. at 8, ECF No. 239.) More than thirty days passed without any indicated response from the Warden, after which Mr. Waldron appropriately filed his own request for compassionate release with this court. (See id. at 1-2.)

### B. Successive Motion

Because the court has recently denied a motion for compassionate release filed by Mr. Waldron, the court now determines whether Mr. Waldron's second motion presents any new extraordinary and compelling circumstances. The court finds that it does not.

Mr. Waldron cites the following circumstances in his motion: "the length of sentence served, extraordinary rehabilitation, the additionally punitive nature of serving time during the COVID-19 pandemic, and other enclosed arguments." (Mot. at 1, ECF No. 239.) By themselves, neither Mr. Waldron's 17-year sentence nor any rehabilitation are sufficient to

constitute extraordinary and compelling circumstances. Mr. Waldron's sentence, while long, was nevertheless below the guidelines range.[2] Furthermore, the court has already addressed Mr. Waldron's arguments about COVID-19 in its order denying his first motion for compassionate release. (Order at 3-5.) Mr. Waldron presents no new circumstances related to the pandemic or concerning his health.

As for the "enclosed arguments," they consist of several pages of generic analysis that could apply to any prisoner confined at Sheridan FCI without any explanation of how these arguments relate to Mr. Waldron. The court summarizes these arguments as follows: 1) harsh conditions of confinement during COVID-19 have resulted in a sentence that is overly punitive; 2) conditions at Sheridan FCI are especially dire; 3) an amendment to USSG §4A1.1, proposed to have retroactive effect, will change the calculation of criminal history points, thus resulting in a lower guideline range for many prisoners; and 4) another amendment to the United States Sentencing Guidelines may adjust the base offense level computation for prisoners convicted of crimes involving methamphetamine. (Mot. at 1-7.)

As discussed above, the court has addressed Mr. Waldron's arguments concerning COVID-19 in a fully briefed prior motion for compassionate release. Meanwhile, Mr. Waldron's

---

[2] Mr. Waldron was convicted of five counts, including one count of Possession of Methamphetamine with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1), carrying a mandatory minimum sentence of 10 years, 21 U.S.C. § 841(b)(1)(A)(viii), and one count of Possession of Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c), carrying a mandatory minimum sentence of 60 months to be run consecutively to any other sentence, 18 U.S.C. §§ 924(c)(1)(A)(i) & § 924(c)(1)(D)(ii). (Judgment at 1-2, ECF No. 172.) The court was thus required to sentence Mr. Waldron to a minimum of 180 months. The offense level for Mr. Waldron's drug charges was 30 (see PSR ¶ 25, ECF No. 140) and the court amended Mr. Waldron's criminal history score downward to category V (see Statement of Reasons at 2, Box I.B.3, ECF No. 173). The guideline range for his drug charge was therefore 151 to 188 months. See USSG Ch. 5, Pt. A. With the addition of the mandatory consecutive 60 months for the firearms charge, Mr. Waldron's guideline range was 211 to 248 months. He received a sentence of 204 months. (Judgment at 3, ECF No. 172.)

arguments about the conditions at Sheridan FCI present generalized grievances against the prison that do not rise to the level of extraordinary and compelling reasons to reduce the sentence of a specific prisoner. While the court takes seriously allegations about the lack of running water during periods of the pandemic and other deprivations, the appropriate way to address these concerns is through administrative grievances at the prison, a suit under the Federal Tort Claims Act, or other legal action specifically challenging the alleged violations, not through a motion for compassionate release.

Mr. Waldron has not demonstrated that any proposed or putative amendments will affect the guidelines range on which his sentence was based. After consultation with the probation office, the court has determined that Mr. Waldron had a criminal history score of 11.[3] Therefore, a one-point reduction in his score under the new amendments would not change his criminal history category or change the guideline range under which Mr. Waldron was sentenced.[4]

---

[3] Mr. Waldron received a criminal history score of 20 in his Presentence Investigation Report. (PSR ¶ 43.) Mr. Waldron objected on the ground that there was no intervening arrest between some of his prior offenses (see PSR ¶¶ 36-38), and that because sentence was imposed on the same day for these offenses (May 30, 2001), the sentences should be treated as a single sentence (Def.'s Sent. Mem. at 7-8, ECF No. 169). See USSG §4A1.2(a)(2). The Honorable Dee Benson adjusted Mr. Waldron's criminal history category from VI to V but did not specify Mr. Waldron's new criminal history score (see Statement of Reasons at 2, Box I.B.3). The court has consulted with the probation office, who considers that separate offenses committed while in custody are separated by an intervening arrest but agrees that the offenses described in paragraphs 37 and 38 occurred within a 24-hour period with no intervening disciplinary procedure and should be counted as one sentence. Disregarding the offenses described at paragraphs 35, 39, and 40 (prior sentences of at least 60 days not counted in §4A1.1(a) but occurring more than ten years before the instant offense, see USSG §4A1.1, comment. (n.2)), and counting the offenses described in paragraphs 37 and 38 as one sentence, the probation office calculates Mr. Waldron's revised criminal history score as 11 (category V).

[4] Even if the court reduced Mr. Waldron's criminal history category to IV, his new guideline range would be 195 to 228 months (135 to 168 months for the drug charges at offense level of 30 and criminal history category IV, plus 60 months for the firearms charge). Mr. Waldron's 204-month sentence is still at the lower end of this range.

As for changes to the sentencing guidelines for crimes involving methamphetamine, Mr. Waldron's motion acknowledges that the United State Sentencing Commission "did not have the time to address [these amendments] in this amendment cycle …." (Mot. at 7.) Until the Sentencing Commission promulgates an amendment, a motion for sentence reduction under 18 U.S.C. § 3582(c)(2) is not ripe for review.

Finally, the court notes that Mr. Waldron's cites the following reasons for a sentence reduction in his administrative request: "Covid-19, conditions of confinement, sentencing changes, medical/psych, family circumstances, time-served." (Mot. at 9.) The court has already addressed Mr. Waldron's arguments concerning COVID-19, conditions of confinement, sentencing changes, and his health. In its previous order, the court found that Mr. Waldron's family circumstances did not rise to the level of extraordinary and compelling circumstances. (See Order at 5-6.) And although Mr. Waldron's reference to "time-served" is cryptic and not specifically referenced in his motion filed in this court, the court notes it does not have jurisdiction to review a petition under 28 U.S.C. § 2241 challenging the Bureau of Prison's computation of credit for prior custody because Mr. Waldron must make such a challenge in the United States District Court in the district where he is confined. Rumsfeld v. Padilla, 542 U.S. 426, 443-47 (2004).

Because Mr. Waldron has not presented any new circumstances that would alter the court's previous ruling, and because his new arguments are insufficient to grant a reduction in sentence, the court finds that it plainly appears from Mr. Waldron's motion that he is not entitled to relief.

**ORDER**

For the reasons set forth above, the court DENIES Mr. Waldron's motion for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 239).

SO ORDERED this 11th day of September, 2023.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge